IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PADMAPRIYA ASHOKKUMAR, an individual, | ) ) ) | |
| Plaintiff, | ) ) | 4:12CV3067 |
| v. | ) ) ) | |
| MATTHEW DWYER, in his official capacity as Current Chair of the Department of Computer Science and Engineering at the University of Nebraska-Lincoln, BYRAV RAMAMURTHY, In his official capacity as current Computer Science and Engineering Graduate Committee Chair University of Nebraska-Lincoln, STEPHEN REICHENBACH, In his official capacity as current Computer Science Graduate Subcommittee Chair, and JOHN DOE, Numbers 1-99, unidentified members of the Computer Science and Engineering Committee and Computer Science Subcommittee, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

This matter is before the Court following a non-jury trial. The Court has reviewed all of the evidence and the arguments of counsel and their briefs and now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

I.   PROCEDURAL BACKGROUND

On April 5, 2012, Padmapriya Ashokkumar filed a complaint seeking an injunction "requiring Defendants to allow Ashokkumar to use her previous research and dissertation topic." (Filing No. 1 at 24).  At that time it was assigned to the Honorable John M. Gerrard for trial in Lincoln, Nebraska.

The defendants filed motions for summary judgment and for judgment on the pleadings and on March 15, 2013, Judge Gerrard filed a memorandum and order (Filing No. 56) dismissing plaintiff's constitutional claims against Espy and Paul in their official capacities for failure to state a claim; and dismissed plaintiff's constitutional claims against Espy, Goddard and Paul in their individual capacities, based on qualified immunity; dismissed plaintiff's breach of contract claim as to all defendants in their individual capacities for failure to state a claim, and in their official capacities based on Eleventh Amendment immunity; dismissed plaintiff's emotional distress claims as to Espy, Goddard and Paul in their individual capacities for failure to state a claim and in their official capacities based on Eleventh Amendment immunity; denied as moot the plaintiff's constitutional and emotional distress claims against Elbaum, Hochstein and Henninger in their individual and official capacities; dismissed the plaintiff's constitutional and

-2-

emotional distress claims as to Elbaum, Henninger and Hochstein
in their individual and official capacities, based on the statute
of limitations, then provided that plaintiff could proceed with
her constitutional claims against Goddard in his official
capacity, limited to seeking injunctive relief.

In July 2013, Dr. Goddard stepped down as chair of the
department and Dr. Matthew Dwyer ("Dr. Dwyer") became acting
chair (Filing No. 136 at 28).  Dr. Dwyer was then substituted as
defendant with respect to the official capacity claims of
plaintiff filed against Dr. Goddard.

On January 29, 2014, the Court entered a text order
granting plaintiff's motion to amend her complaint and directing
that it be filed on or before February 5, 2014.  On January 31,
2014, following her attempt to rematriculate into UNL, Ashokkumar
filed an Amended Complaint (Filing No. 111).  The Amended
Complaint did not include Dr. Goddard as a defendant but replaced
him with Dr. Dwyer.  Ashokkumar also added other defendants based
upon the decision of the CSE not to reactivate her program.
Ashokkumar added, in their official capacities, Byrav Ramamurthy
("Dr. Ramamurthy"), Stephen Reichenbach ("Dr. Reichenbach"), and
unnamed members of the department (Filing No. 111 at 2-3).  Dr.
Ramamurthy is the current chair of the CSE Graduate Committee
(*Id.*).  Dr. Reichenbach is the former chair of the Computer

-3-

Science ("CS") Graduate Subcommittee within the CSE from October
2013 through January 2014 (Filing No. 180, at 2).  The remaining
defendants were unnamed but constitute the then-existing voting
members of the CS Graduate Subcommittee (Filing No. 114, at 3).
Those defendants are Drs. Ashok Samal ("Dr. Samal"), Anita Sarma
("Dr. Sarma"), and Hongfeng Yu ("Dr. Yu") (*Id.*).  The Amended
Complaint seeks several injunctive reliefs based upon the failure
of Dr. Goddard to prevent violations against Ashokkumar and based
upon the decision of the department not to reactivate
Ashokkumar's program.

On February 13, 2014, Judge Gerrard recused himself
(Filing No. 121) and the case was then assigned to the Senior
Judge Richard G. Kopf.  The non-jury trial before Judge Kopf
commenced on June 9, 2014, and continued to June 12, 2014.  On
June 16, 2014, Judge Kopf declared a mistrial and recused himself
from further participation (Filing No. 164).  On June 18, 2014,
the case was assigned to Senior Judge Lyle E. Strom for
disposition.

 After consultation with counsel, the case was
scheduled for completion of trial commencing February 3, 2015.
Trial was completed on February 5, 2015, following which briefing
schedules were established.  Briefs have been received and the
case is now ready for disposition.

-4-

II.  FINDINGS OF FACT

Ashokkumar began her studies at UNL in 2002 as a graduate student pursuing a doctorate degree in CSE (Filing No. 136, at 1).  In 2004, Ashokkumar was admitted to doctoral candidacy.  Her advisor was Dr. Scott Henninger ("Dr. Henninger") (*Id.* at 1-2).  Ashokkumar had an approved research topic ("first doctoral topic") (*Id.* at 2).  Ashokkumar and Dr. Henninger co-wrote several papers, and the parties cannot discern the individual author's work.

Ashokkumar became frustrated with Dr. Henninger for the lack of progress toward her degree.  On September 29, 2006, Ashokkumar officially changed her advisors to Drs. Lorin Hochstein ("Hochstein") and Sebastian Elbaum ("Elbaum") (Ex. 53; Filing No. 136 at 3-4).  Ashokkumar changed her doctoral topic to match her advisors' interests ("second doctoral topic") (Filing No. 136, at 3).

Ashokkumar, Dr. Elbaum, and Dr. Hochstein prepared a paper that they submitted on January 15, 2007, to the Empirical Software Engineering and Measurement ("ESEM") Conference ("the ESEM Paper") (*Id.* at 5).  Soon thereafter, Dr. Henninger contacted the ESEM Conference chairs and claimed the ESEM Paper was under dispute at UNL (Filing No. 136 at 7).  Dr. Hochstein tried to reach an amicable agreement with Dr. Henninger regarding

-5-

the ESEM Paper but was unsuccessful (*Id.* at 6).  Dr. Henninger's
charge of plagiarism made Ashokkumar's pursuit of her doctoral
degree difficult (Filing No. 175 at 46:18-47:15).

On April 4, 2007, Ashokkumar filed a charge of research
misconduct, RM07-001, against Dr. Henninger, based upon a paper
Dr. Henninger published in late 2006 without attributing work to
Ashokkumar (Ex. 35).  Ashokkumar claimed that the paper was
substantially the same as a paper she drafted with Dr. Henninger
while he was still her advisor (Filing No. 136 at 5, 8).

On April 12, 2007, Dr. Henninger initiated a formal
charge of plagiarism, RM07-002, against Ashokkumar, Dr. Elbaum,
and Dr. Hochstein (*Id.* at 8).  In RM07-002, Dr. Henninger claimed
that they plagiarized his work in the ESEM Paper (Ex. 127).

In 2007, UNL misconduct policies called for specific
actions following the filing of a misconduct complaint, which the
Court paraphrases as follows.  First, an inquiry committee would
be formed to determine whether the claim was sufficiently
meritorious to investigate.  Second, if the claim passed the
inquiry phase, an investigative committee would be formed to
investigate the claim and issue a report.  Third, UNL would work
with the claimant and other parties to resolve the misconduct and
make the parties whole, as necessary.  In accordance with this
policy, UNL formed two inquiry committees.

-6-

On May 18, 2007, before either inquiry committee issued its final report, the CSE Chair, Dr. Sincovec, encouraged all parties to settle the claims outside that system and withdraw their claims (Ex. 62 at 4-5) (Filing No. 136 at 9).  In late May 2007, Drs. Rothermel, Elbaum, and Hochstein approached Ashokkumar and talked to her about settling with Dr. Henninger and withdrawing her claim against him (Filing No. 136, at 11).  On May 22, 2007, Ashokkumar discovered that UNL policy prohibited her from withdrawing her claim (Ex. 1 at 1).  Dr. Henninger essentially ended settlement negotiations following a rough draft from the Inquiry Committee for RM07-002 (Filing No. 136 at 9; Ex. 42).

On June 7 and 10, 2007, the two Inquiry Committees recommended further investigation in RM07-001 and RM01-002 respectively (Filing No. 136 at 9; Ex. 69; Filing No. 190 at 117:3-119:24).  After attempted arbitration and mediation, on July 25, 2007, Dr. Paul submitted the final version of the Mediation and Arbitration Agreement to the parties which Ashokkumar rejected (Ex. 163; Filing No. 191 at 137:20-22; Filing No. 136 at 13).  On August 7, 2007, Dr. Paul accepted the recommendations of the Inquiry Committees and formed a joint Investigation Committee for RM07-001 and RM07-002.

-7-

As these misconduct proceedings wore on, Ashokkumar and Dr. Elbaum spent less time talking about research and more time talking about settling the research misconduct cases (Filing No. 175 at 50:23-51:5). Dr. Elbaum concluded that Ashokkumar did not trust his advice on how to solve the problem with Dr. Henninger. Dr. Elbaum lost trust in her (Filing No. 190 at 65:3-66:2; 120:4-121:21). Dr. Elbaum believed the trust necessary between advisor and student had broken down, and he did not feel that a healthy relationship could continue forward under those circumstances (Filing No. 177 at 114:1-116:21; Filing No. 190 at 120:4-121:21). Ashokkumar perceived strain in their relationship. She testified that she was angry with Dr. Elbaum during the proceedings because she felt pressured and harassed regarding potential settlements (Filing No. 175 at 41:16-42:10).

On August 22, 2007, Dr. Elbaum informed Ashokkumar he would no longer serve as her co-advisor (Filing No. 136 at 13). Dr. Elbaum reported his decision to Dr. Weissinger, who told Dr. Elbaum that "[i]t is always a faculty member's right to step down as chair." Dr. Weissinger also informed Ashokkumar that if Dr. Elbaum "wishes to step down as your co-chair he may do so," and that his decision would leave Dr. Hochstein as her chair (Ex. 44; Ex. 45 at 1; Filing No. 136 at 13). Dr. Hochstein was Ashokkumar's sole advisor after August 22, 2007.

-8-

Sometime before November 19, 2007, Dr. Hochstein told Ashokkumar that they could no longer work on the second doctoral topic (*Id.* at 13). Dr. Hochstein stated that the misconduct investigations caused the pair to temporarily end work on Ashokkumar's doctoral topic (Ex. 304 at 117). Ashokkumar then shifted her attention toward obtaining a Master's degree. Dr. Hochstein initially believed Ashokkumar and he would complete their work on the second doctoral topic once the committee's investigation concluded (*Id.*). However, once Ashokkumar began working on her Master's topic, Dr. Hochstein believed she would pursue that topic for her doctorate (*Id.*). Ashokkumar received a Master of Science degree from UNL on December 22, 2007, under the supervision of Dr. Hochstein. The topic for her Master's project was unrelated to the first or second doctoral topics (*Id.*).

On May 9, 2008, Dr. Hochstein sent a letter of resignation to Dr. Sincovec (Ex. 304 at 121). Dr. Hochstein was unhappy at UNL due to the ineffectiveness of his two years instructing there, lack of friends, and his projects remaining unfunded (*Id.* at 121-22). Dr. Hochstein attributed his unproductiveness to RM07-001 and RM07-002 and faulted Dr. Henninger for what happened to him (*Id.* at 121, 129). Ashokkumar was without an advisor and, therefore, unable to complete her

doctoral degree because UNL requires a doctoral candidate work
with an advisor to complete their dissertation.

Six weeks later, on June 20, 2008, the Investigation
Committee submitted its final versions of the Investigation
Committee Reports (Ex 26; Ex. 208).  In RM07-002, the
Investigation Committee found Ashokkumar, Dr. Elbaum, and Dr.
Hochstein did not commit plagiarism (Ex. 208 at 12; Filing No.
136 at 14-15).  In RM07-001, the Investigation Committee found
that Dr. Henninger engaged in plagiarism (*Id.* at 15).  On July 3,
2008, Dr. Paul adopted those recommendations.

After the committee issued the final report, Ashokkumar
asked Dr. Elbaum to help her complete her second doctoral topic.
He refused.  Ashokkumar argued that the CSE department had a duty
to restore her position under the misconduct policy and, in order
to do so, the department had to compel Dr. Elbaum to advise her.
The department (and the Research Integrity Officer) determined
that the department could not compel a faculty member to act as
an advisor.  Then, Ashokkumar and the CSE department sought to
find a new advisor for Ashokkumar.  At first, Ashokkumar
conditioned her acceptance of an advisor upon the advisor
allowing her to use the second doctoral topic.  Ultimately, those
attempts failed.  As Ashokkumar argued before, she felt the CSE
department could only restore her position by compelling a new

-10-

advisor to use her previous work.  The department (and the
Research Integrity Officer) determined that the department could
not compel a faculty member to accept a dissertation topic.  The
parties disagreed as to what duties UNL held to Ashokkumar after
she was vindicated, what remedies UNL could reasonably (or
diligently) offer, and who was responsible for obtaining a new
advisor for Ashokkumar.

     After nearly three years of these disagreements, in
March 2011, Ashokkumar realized she could not pursue her second
doctoral topic.  Ashokkumar then began to seek a new advisor and
a new topic.  Dr. Jitender Deogun ("Deogun") had experience in
Ashokkumar's areas of study.  Dr. Deogun also expressed interest
in working with Ashokkumar.

     This relationship was never formally established,
however, because Ashokkumar refused to sign an intellectual
property waiver.  Though Ashokkumar questioned the propriety of
the waiver, its propriety is no longer questioned and her
concerns seem meritless in retrospect.  Because of the waiver and
an approaching deadline, Ashokkumar chose not to register for a
one-credit class.  She knew this decision would effectively end
her doctoral program at UNL (Ex. 243).  In early September 2011,
UNL discontinued, or deactivated, Ashokkumar's program.

In April 2012, Ashokkumar filed this action.  During pretrial events, Ashokkumar repeatedly expressed interest in pursuing her doctoral degree at UNL (Ex. 301 at 190:16–25).  In a September 2013 deposition, Dr. Deogun stated he would still be willing to consider working with Ashokkumar.  Ashokkumar sought to reactivate her program.  UNL offered to reactivate her program if she met two conditions by December 15, 2013.  These conditions effectively would cause Ashokkumar and Dr. Deogun to work together to approve a topic for Ashokkumar and submit documentation to that effect.  That process was necessarily recursive and required some time to complete, approximately two to four weeks.  Ashokkumar failed to meet that deadline.

UNL granted an extension of the deadline to January 15, 2014, with the understanding that the defendants would not grant more extensions.  Ashokkumar did not reach out to Dr. Deogun and UNL until the eve of the deadline, January 14, 2014.  Dr. Deogun informed the defendants that he would be unable to effectively evaluate the contents of Ashokkumar's proposed topic.  Because the defendants' conditions were not satisfied, they denied Ashokkumar's reactivation.

III. LEGAL STANDARD

Under Title 42, United States Code, Section 1983, private parties may enforce federal rights against those whom

violate those rights under color of state law.  42 U.S.C. § 1983.
The essential elements of a constitutional claim under § 1983
are:  (1) the defendant acted under color of state law, and (2)
that the alleged wrongful conduct deprived the plaintiff of a
constitutionally protected right.  *L.L. Nelson Enters., Inc. v.
Cnty. of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012).  The
parties do not dispute that the defendants' actions occurred
under color of state law.  The sole remaining issue is whether
the defendants violated Ashokkumar's constitutional rights.

IV.  CONCLUSIONS OF LAW

A.   RELIEF

        The Court will begin its discussion by addressing what
relief is possible, mainly because Ashokkumar alleges that the
defendants have violated her rights by failing to provide her
such relief.  The Court generally agrees with the defendants that
certain requested relief is not feasible or is impractical.

        Federal courts can enjoin a state official from
enforcing a state statute that contravenes federal law without
running afoul of the Eleventh Amendment.  *Ex parte Young*, 209
U.S. 123, 156 (1908).  But while a state official can be
"prohibited from doing an act which he has no legal right to do,"
a court can "only direct affirmative action where the officer
having some duty to perform not involving discretion, but merely

-13-

ministerial in nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty." *Id.* at 158-59. "*Ex parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law." *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001).

First, reinstatement is generally considered a remedy for an ongoing violation of federal law and thus may be pursued under *Ex parte Young*. Filing No. 56 at 6-7. Courts are obligated to "tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288-89 (4th Cir. 2010) (citing *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977)). Courts shape equitable remedies based upon the nature and scope of the constitutional violation. *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995).

Second, the Court finds that neither the defendants, nor this Court, can compel an advisor to accept a doctoral topic. Practically, the defendants may not have faculty with sufficient expertise to advise on that topic. Also, the Court's compulsion of an advisor's activities seriously undermines the role of education and the relationship between advisor and advisee. Effectively, if a professor is compelled to act as an advisor,

-14-

the compelling entity, such as UNL or this Court, is diminishing the critical role of advisor by substituting its judgment in lieu of the advisor.  The Court and UNL cannot substitute their will for that of an advisor.

Third, the Court finds that neither the defendants, nor this Court, can compel an advisor to accept a topic. Ashokkumar's second doctoral topic is likely unusable now, or at least Ashokkumar has offered no evidence to the contrary.  The parties agree that doctoral dissertation topics must be novel. Ashokkumar's first and second topics are nearly a decade old and potentially archaic by computer science standards.  The Court cannot make an archaic thing novel again, nor can the Court determine whether a thing was ever novel in this case.  The determination of novelty and suitable topics cannot not be judged by this Court.

Finally, Ashokkumar has requested the Court compel UNL to produce a letter which states:  "The delay in Padma Ashokkumar's doctoral program at the University of Nebraska - Lincoln was in no way due to her academic performance and does not reflect her abilities as a student."  UNL remarked at trial that Ashokkumar has never officially requested such a document and the CSE department has offered a comparable document previously.

B.   FIRST-AMENDMENT-RETALIATION CLAIM

        To successfully prove this claim against a public
official, a plaintiff "must show (1) that [s]he engaged in a
constitutionally protected activity; (2) that the defendant took
adverse action against [her] that would chill a person of
ordinary firmness from continuing in the activity; and (3) that
the adverse action was motivated in part by [the plaintiff's]
exercise of [her] constitutional rights." *Scheffler v. Molin*,
743 F.3d 619, 621 (8th Cir. 2014).

        First, the Court has previously found that Ashokkumar's
misconduct charge was a protected activity.  Filing No. 56, 8-10.
The Court also finds that Ashokkumar's decision not to settle
that charge was a protected activity.  Therefore, the Court finds
Ashokkumar established the first element for all her claims.

        Second, the Court must determine whether Dr. Goddard's
actions or inactions toward Ashokkumar were sufficiently adverse
to chill a person of ordinary firmness.  The "ordinary firmness
test" excludes trivial matters, but requires only a small effect
on the freedom of speech, because "there is no justification for
harassing people for exercising their constitutional rights, it
need not be great in order to be actionable." *Garcia v. Trenton*,
348 F.3d 726, 728-29 (8th Cir. 2003).  The test is objective,
meaning the Court will not ask whether Ashokkumar was deterred,

-16-

but how a person of ordinary firmness would have reacted to the
government's action. *Id.* Specifically, whether a person of
ordinary firmness would simply ignore the action or would that
person have been slowed down "at least to some degree?" *Id.* at
729.

Third, the Court must determine whether that adverse
act was motivated, at least in part, by Ashokkumar's decision to
exercise her rights. *Santiago v. Blair*, 707 F.3d 984, 991 (8th
Cir. 2013); *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).
In the Third Circuit, evidence of frustration and other negative
feelings by defendants toward the plaintiff's protected activity
supports a conclusion that the adverse acts were motivated by her
protected activity. *See Reilly v. City of Atl. City*, 532 F.3d
216, 233 (3d Cir. 2008).

The Court finds that Dr. Goddard did not retaliate
against Ashokkumar. Primarily, Ashokkumar was not entitled to
the relief she demanded from the defendants. Therefore, there
was no adverse action on the part of Dr. Goddard failing to
compel a professor to be an advisor, or for an advisor to accept

-17-

Ashokkumar's prior doctoral topics.[1]  Secondarily, the Court
finds that Drs. Elbaum and Hochstein did not retaliate against
Ashokkumar and that Dr. Goddard was under no duty to protect
Ashokkumar from this purported retaliation.

     The Court finds Dr. Elbaum's resignation was not an
adverse action against Ashokkumar that would chill a person of
ordinary firmness from continuing in the activity.  The second
doctoral topic was not imperiled by Dr. Elbaum's departure
because Dr. Hochstein continued as advisor and, at that time,
Ashokkumar would be able to pursue her topic after the
investigations of misconduct concluded.  *Garcia*, 348 F.3d at 729.

     The Court finds that Dr. Hochstein's resignation was
not motivated, even in part, by Ashokkumar's protected
activities.  As Dr. Elbaum left Ashokkumar's team on August 22,
2007, only Dr. Hochstein remained as her doctoral-topic advisor.

     Dr. Hochstein expressed no anger or frustration at
Ashokkumar for her actions.  *Reilly*, 532 F.3d at 233; Ex. 304 at
121-22, 129.  Indeed, Dr. Hochstein stood beside Ashokkumar
during the misconduct proceedings and assisted her in completing

---

     [1]  This finding excludes the following theories that
Ashokkumar posited as retaliation:  lost her faculty advisor,
lost her supervisory committee, lost her ability to use the
second doctoral topic, failure to restore her position, failure
to restore her reputation, and failure to protect Ashokkumar from
retaliation.

a terminal degree.  Dr. Hochstein testified that he was unhappy
at UNL due to the ineffectiveness of his two years instructing
there.  The Court finds Dr. Hochstein did not violate
Ashokkumar's rights.

        To the extent that Ashokkumar argues that Dr. Elbaum's
refusal to work with her following her vindication, the Court
finds that Elbaum's refusal was not adverse.  Dr. Hochstein's
resignation ended Ashokkumar's pursuit of the second doctoral
topic.  Ashokkumar cannot place the onus of that action on Dr.
Elbaum retrospectively.

        The Court addresses some remaining issues regarding
Ashokkumar's retaliation claims.  The defendants offered
Ashokkumar an explanatory letter regarding the findings of the
investigative committee's report.  The Court finds this letter
sufficiently satisfied the defendants' duty to restore
Ashokkumar's position and her reputation.  To the extent that
Ashokkumar argues that Dr. Reichenbach held a grudge against
Ashokkumar, the Court finds Ashokkumar's evidence was too tenuous
to meet her burden of proof and finds that Dr. Reichenbach's
actions during her attempt to reactivate her program were neither
adverse or motivated by Ashokkumar's exercise of her rights.  In
light of the Court's findings, the actions of the defendants were
not retaliatory.

                              -19-

C.   DUE PROCESS

Ashokkumar's Due Process arguments center largely around her inability to compel the defendants to compel Dr. Elbaum or another advisor, to accept her as an advisee or her second doctoral topic.  As the Court stated above, such relief was not available to Ashokkumar and, therefore, the denial of such relief was not a violation of her Constitutional right to Due Process.

Ashokkumar also argues that the defendants' actions during her attempted reactivation violated her rights.  Ashokkumar makes accusations that Dr. Reichenbach was not a neutral decision maker and that the defendants' conditions and deadlines were arbitrary.  The Court finds that Ashokkumar has failed to meet her burden that Dr. Reichenbach was insufficiently neutral.  Further, the Court finds that the defendants' conditions and time frame for reactivation were reasonable.  The Court finds that Ashokkumar's own conduct caused the failure of her reactivation.

Finally, the Court finds that the defendants had discretion in their actions and acted reasonably within that discretion; therefore, Ashokkumar lacked a property interest. *See Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008); *Entergy, Arkansas, Inc. v. Nebraska*, 241 F.3d 979, 990-91 (8th Cir. 2001).

The Court finds that the defendants did not "do nothing" as Ashokkumar argues.

V.    CONCLUSION

The Court finds that the defendants did not violate Ashokkuma's constitutional rights.  Without a violation of constitutional rights, no on-going violation exists to support a grant of injunctive relief.  Therefore, the Court finds for the defendants.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 4th day of May, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-21-